I have the privilege of this morning of moving the admission of Matthew Samuels, who is a member of the bar and is in good standing with the highest court of California. I have knowledge of his credentials and I am satisfied that he possesses the necessary qualifications. In fact, I have intimate knowledge of his past and I am pleased to present him as a member of the Bar Association. I have intimate knowledge of his credentials because he is my current law clerk. When Matthew first came to see me almost many years ago, he was a brilliant, brilliant student at Stanford Law School and he had been highly recommended to me and because he had gone through school so quickly, I said maybe you should get some experience first. So I suggested he either work for a few years or maybe get a district court clerkship. So he decided to do both before coming to me. He worked at Gibson Dunn. He clerked for my good friend, Joe Jotaro in California. And then at that point, with all that experience under his belt, he was still willing to come clerk for me. And it has been my pleasure to have him, to have all of his talents, to have his great humor, and he's been a joy to have in Chambers. So I'm happy to move the submission. Well, I'm delighted to grab the motion and congratulate you. Thank you. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and support the Constitution of the United States of America? I do. Welcome to the Board of United States Court of Appeals. Congratulations. The first case for argument this morning is 17-1162, Google versus personal audio. Mr. Bagatelle, whenever you're ready. May it please the Court, Dan Bagatelle on behalf of Google, with me are my colleagues Matthew Nicholson and Lane Polozola. This case involves two patents on an audio program player with a sequencing file and quote-unquote simple navigational commands. The simple navigational command on direct appeal is the back command, which was not new. The reference on which we were relying goes back to 1983 and described not only a back command, but a back command that went back to the beginning of either the previous file or the current file, depending on the passage of a predetermined amount of time. There's, as you've seen in the briefs, no real dispute about how this Inizawa patent operated. The question is whether the claims covered that operation. There are two issues, the first being what we call the reset or seek time issue that affects all the claims. And then there's a single back command issue that deals with just one claim. I think I understand your argument. I mean, there is sort of an instinctive appeal, sort of what's the big deal and what's the difference and would any user ever care about the distinction. But there is a distinction, is there not? I mean, the double press in the prior art was calculating the time between the pressing of one and the pressing of the second button. And it's different in the claim. The claim is dependent on the amount of time that has elapsed in terms of audio play, right? No, I actually disagree with that. And I think that's a critical point. What the claim language says is discontinue reproduction and continue reproduction at the beginning of either file, depending on whether the currently playing file has played for a predetermined amount of time. Has played is an ambiguous term. We talk about playing a record or a CD or a DVD, and we talk about that from when we hit the play button. It may also have a meaning that could talk about the amount of time that the sound has come out of the speaker. But the claims actually discuss both continuing the reproduction and playing, and they do it distinctly. More importantly, you look at the specification. The only description of timing in the pattern – You said has played is ambiguous. Did you ask for a construction of the phrase has played? No, we didn't directly ask for that. We applied some of the constructions that have been used in the district court case. But it came up, obviously, during the course of the case. Even in the district court case, the district court disagreed with your view that has played could be something other than that amount of time that the playing had gone on. I don't think so, Your Honor, because I think the district court's construction is very similar to the claim language. I don't think it was resolved in the district court. In fact, it really didn't come to a head, so to speak, until oral argument, when really this issue crystallized of whether the reset time could be included. And our point really depends heavily on the specification. I'd urge Your Honors to take a look at Figure 3, because a picture is worth a thousand words in this case. Figure 3 of the patent is – Which – Either one. 178. The 178 is fine. I guess the figures are identical. Yeah. Page 51 of the blue brief would be one of many examples. If you look at Box 267, it says record segment end and new start. That is the place in the patent where the timer is clocked. And it explains that in Column 15, which refers to Box 267 as recording the start time of that file. That is the only place in the patent where you clock the beginning of playback. That occurs before Box 269, which is entitled reset to next segment start. So the clocking begins before the reset occurs. It may be – What exactly would your has played language have to mean for Inizawa to teach it? Well, in our view, at least it would need to cover the preferred embodiment, the sole preferred embodiment in the patent. We are not saying that it excludes a calculation in which it would run from the beginning of audible sound or the reproduction of sound, if you will. But it certainly should not exclude the preferred embodiment, which refers to clocking and then doing the reset. Well, now, 267 is, as I understand it – correct me if I'm wrong on this – is recording the start and stop times in the log file. Yes. And why is it not the case that the playback time is different from the log file? Because that's the only calculation of playback time that's talked about in the patent anywhere. There's no discussion of any other clocking in the patent. We've read through it. We can't find any other reference to any other calculation. You've got to remember, this reset time is really infinitesimal and pretty much unrelated to the importance of the predetermined amount of time. Yes, it depends on the particular device, but in modern times, modern devices, it's infinitesimal. It didn't used to be. Yes, but even in 1983, you were probably talking about maybe a second. And the point of the predetermined amount of time is – But a second is not negligible if the predetermined time is a second and a half or two seconds. No, no, no. Perhaps, but the point of the predetermined amount of time is to make a distinction between when do you go to the beginning of the current file and when do you go to the beginning of the previous file. And the only explanation of that in Column 15 or anywhere in the patent is basically, you make an assumption about whether if they hit it relatively early on and during playtime, you want to go back to the beginning of the previous file. Otherwise, you go back to the beginning of the current file. That has very little to do with whether some tiny fraction of a second or maybe even a full second, because that's just got nothing to do with the predetermined amount of time in terms of its significance in the patent. But again, I think our main point here is that the plain language of the claim does not specify what has played mean. It actually talks about both playing and reproduction of sound and doesn't equate the two. Neither does the courts and the board's construction. And the preferred embodiment is exactly the way it is in Inazawa. If you agree with us on that, I don't think you need to reach the T3. When you say preferred embodiment, you're talking about Figure 3. Figure 3, the only embodiment. And this depends on your argument that the log file times determine the playback time. Well, it says recording the start time in the log file. So the start time is the start time. Start time, but start time of what? Start time of actual playback? Yes. Or start time of playback plus something else? Well, the only thing that's calculated in the patent, and that's what apparently we're referring to is the predetermined amount of time that something has played. And as I've tried to explain, that has played can include how long it's been since you've hit the play button, not just how much time has it been coming out of the speaker or has it been reproduced in the circuitry somewhere. It's at least ambiguous. Well, if there were a five-second delay, then intuitively the term has played, and I punch a button and I wait five seconds and then the song begins. I would not think that that song has been playing for the entire period of the song plus five seconds. Intuitively, that does not seem right. Perhaps. And we're not trying to exclude that construction. We're simply saying that the claim has to at least encompass what's shown in the only preferred embodiment, the only embodiment in the patent. Our point is that the term is at least ambiguous, and why would you read it to exclude the way the patent does it in Figure 3? Again, that's the only place where they record the start time. So if you agree with us on that point, then you wouldn't need to reach the T3 minus T2 issue. We've raised that as an alternative. That is something that came up at the hearing. We explained why T3 minus T2 excludes T2, which is that seek time. But I'm hoping that you will not need to reach that. In my remaining time on the direct appeal, I'd like to turn to that single back command issue, if I may. And again, I think a picture speaks a thousand words. If you could take a look at Figure 2 of Inazawa, for example, on page 39 of the blue brief. It's in several different places. Any one of those examples will do. We think this affects only Claim 2 of the 076 patent. That's the only claim that requires a single back command as opposed to A, which normally... So what do you think happens in the 076 patent when the back key is pressed once before the predetermined amount of time? Basically, if you look at the orange press at the beginning of Figure 2A, that's when it goes into this reverse program selection mode, and it moves to the start of Track N, and it starts the timer. None of this is disputed. So if nothing happens during that T3 period, it times out. It basically goes back into normal mode. And if that happens, and you press it just after that T3 predetermined amount of time in red, then you re-enter a reverse program selection mode, and you move to the beginning of Track N. The patent refers to it as being the same as the first press. It is another press, but the movement is in response to that last one because the first one timed out. If there is an intervening button press during that T3 period, a second press, then it moves to the beginning of Track N-1. That matches Claim 3 exactly. It matches Claim 2 exactly because if there is no press during T3, then it moves to the beginning of Track N. If there is a press before T3, it goes to the beginning of N-1. Where in the 076 do you see this whole setting the timer stuff occurring? Starting the timer stuff occurring? I don't see a reverse program selection mode as you are discussing. I think now you are getting back to the timing. The two patents are identical specifications. The issue of the reset time is identical in the 076. In fact, Figure 3 is the same. Column 15 is just adjusted by a few lines. Again, our point is that at least the term has played is ambiguous as to whether you are talking about actual reproduction of audible sound or queuing it up, including the tiny little bit of time it is going to take in a modern MP3 player. It really is a trivial amount of time before you have the playback. Just repeating on Claim 2 of the 076, that is basically a single algorithm. My concern is, doesn't Inazawa require the reverse selection program mode? Where is that in the 076? Inazawa defines reverse program selection mode as when you hit the back key. We are not disputing that the timer in Inazawa begins with the press of the back key. Our point is that the queuing of the song occurs at that point. It includes that reset time, T2. We are arguing that the reset time can be included in T3. It is within the scope of the claims. Even if you disagree on that, then Inazawa at least disclosed both T3 and T2. You can look at that predetermined period, T3 minus T2, and call that your predetermined period. Either way, it discloses it. I don't think Inazawa focused on T3 minus T2, but the question is, what did it disclose? It certainly disclosed that time period. We know it had to be predetermined because T3 as a whole is predetermined. The other component of T3 is T1, which is a fixed number, one and a half or two seconds. The complement also has to be predetermined. I'll reserve the rest of my time for a moment, if I may. Well, you say T2 is predetermined? Yes. And yet it's variable. Your argument is that it can be determined because even though it's variable, you can ascertain how long it's going to be. But the question is, does that constitute predetermined? Yes, I think predetermined in this Court's case means predetermined beforehand. You mean determinable? Well, actually, if you look at the Homeland Houseware's case that we cited in our brief, it doesn't have to be actually determined for each blender, for example, in that case. It's basically formulaic. Okay. The product of a formula, which is a known formula, is what you're saying is a predetermined time. Correct. All right. Thank you. Your Honor, may I please the Court? Okay. I just want to address this whole idea that the specification is teaching, that the steps of Figure 3 is how a predetermined amount of time is being determined in this patent. Now, when you look at Figure 3, they're relying on the fact that a timer is set on Step 267, then a reset occurs, and then it says continue playback. Well, what's very clear here is that continue playback is a different step than 269 and 267, and so there's no reason to infer from this that the usage of playback would include these steps. But more importantly… Well, Mr. Begatel contests that proposition, and he says, no, the only reference to the start of the timing is a reference that refers to 267. So what's your answer to that? Well, there's a very clear answer to that, is that nowhere does it say that Step 267 is used for determining the amount of time that the song is playing. In fact, they don't point to anything in their response that says that. What they do do, and I want to draw this attention to their reply brief, and their cite to the 178 patent, column 12, 64 through 66. And if we can get to the 178 patent, I think this paragraph is highly illuminating to this issue. And when we get there, I'll start reading. They cite this portion. Where are you reading? It's the appendix 153, which is the 178 patent. And I would like us to get to column 12, 64 through 66. And they cite that for the first time in their reply brief. But let's look at what this part of the specification says. And if you could nod when you get there, I can start. What they cite is, each time the playback begins a new programming, advertising, or announcement segment, the segment's start time is recorded in the usage log. You're on column 12? Column 12, line 64. It says this right here. This statement, and I'll start over again to make sure we're all there. Each time the playback begins a new programming, advertising, or announcement segment, the segment's start is recorded in the usage log. That's what they cite to you. Now, this does not say anywhere that this timer is being used for the amount of time the song is played. If you keep reading just a few lines forward in this passage that they're referring to, you will eventually get to column 13, line 8. And here the patent talks about using time for purposes of the cost in a billing functions that the usage log is generally referenced as being used for. And that's found at column 13, line 8. They start referring to actual cost per unit of time. Now, let's go a little bit farther, because here's where we get to the critical point. The step 267 of recording of end times is described further. You will eventually get to column 13, lines 12 through 19. And this is what it says. Note that it is not unnecessary to record the end time for the prior segment since it's the same value as the start time for the next segment. Well, that's critically important here, because they're not actually measuring the end time in this usage log. They're measuring the start time. Well, if the start time is after the reset has already occurred and the new song has begun playing, so whatever's happening in this usage log, it can't be used to determine the pre-amount of time that the song is played for purposes of determining where the reset point is. I want to make this very clear. The end time that's recorded in this usage log is measured by the start time of the next segment. So that end time could not be used to determine the reset point of the explicit recited function here. Okay, so in terms of the predetermined amount of time, do you agree that has played is ambiguous? No. I think it's absolutely clear. The ordinary plain meaning is when the song is playing. Also, when you look at step 235, there's a continued playback step. That doesn't include the reset time. That's another indicative of what that means. It means when the song is playing. And, of course, they're saying you need a timer, but this isn't even a timer. It's just a recording of the start time. You don't need a timer for this. As long as CDs go down, the amount of time is indicated in the time sequence information of the video itself. And what this patent does say, determining the current playback position can be determined by a variety of means. If we search that language, we'll find that I could give you a direct site for that. So there's nowhere there's any linkage of a timer to do these kinds of things. Nor would one skilled viewer need to do these things because digital media has this information already in it. And there's also references throughout the patent about this. There's also time indicators measured in here. So this is an entirely false statement, or at least unsupported statement, that this timer thing here is even a timer. It's just a recording of the start time, and that that's used for purposes of the skip back function. What does 267 actually do? Well, some of the things that are done in the usage log is it tells you when it's done. And what it is is recording a clock time. Presumably to have date information, it would be necessary to determine the billing function of it. The usage logs are also used. So it's measuring time, but time of what? Well, it doesn't say in these different references. It says segment end and new start, but I need more information about what exactly that means. The segment end and segment start, it actually doesn't measure the end. It's just measuring starts because of the passage I just read. It says record segment end. Which is the same as the start. So it's actually not measuring the start. It's not a timer. What it's doing is measuring each new start time, and it presumes the end time is the same as the start time, which wouldn't be used for this skip function. But one of the things the billing function does is you use that to determine overall session links. And the overall session links are used to construct new programs. They're also used for billing purposes. They're also used by the song recommendation. All these things are affirmative disclosures for this type of timer. Nowhere does it link this timer to the particular function to determine the amount of time a song is played for skip back purposes. And again, as the passage I just showed you would be inadequate for that purpose because it uses the start time of the next segment, which naturally only occurs after reset point has already been determined. And so anyway we cut it, T3 includes a time period that the song is not playing, so T3 does not meet the explicit language of the claim. T3 minus T2 is a red herring because T3 minus T2 is not disclosed for determining the reset point. T3 is. You can't have it both ways. And of course T3 minus T2 is never calculated, therefore never determined, much less predetermined. And it can't even be predetermined because T2 varies depending on when the button is pressed, and at least in the disclosures of this combination there's no way to estimate that or determine that. So there's just simply no basis for any error. There's nothing here that departs from the ordinary meaning that a song is played would include the time the song is played. And they talk about devices and measuring it from the play button. It actually never measures it from the play button, even in our normal parlance of the world today. If you press the play button, you'll see that the elapsed timer of play doesn't start until the song actually starts playing. So it's never, even in today's CD players or these things that he was trying to describe, that it's measured from the button press. It's not measured from the button press. It's actually measured from when the audio sequence file starts playing and the sequence information is read from that. And the patent explicitly states there's a variety of means for determining the current playback position. And I think you can find that in column 12, lines 41 through 64. And they also talk about time indicator throughout later in the same paragraph. And, of course, all this would be in the normal knowledge of the one skilled in the art. When talking about this particular algorithm, there's no mention of step 267 in the patent or this timer. It just says that you would use the amount of time the song is played. You look up the word predetermined time. There's no reference to 267. And, of course, that teaching is sufficient for someone to employ the normal way this would be done. Look at the time sequence information in that video to determine that. And the timers are disclosed for a whole bunch of different functions. So I don't think they've shown any basis at all that PTAB has made an error. If you're going to try to reach across the field, you're running out of time. Okay. Oh, yes. All right. So, Your Honor, let's talk about Claim 14. The Claim 14 is a claim that referenced the go command. Okay. Claim 14 explicitly requires... You're talking about the 178 patent. The 178 patent. A first command and a second command. And we're going to talk about the go command in general, but I think Claim 14 crystallized the issues. There are two explicit separate commands there, one for go and one for skip. And the difference between the go command is a go command jumps to any song selected by a listener on a visible menu. On a menu. The skip command, what it does is the system looks at the sequencing file and determines the next song of the appropriate lock type, and then you advance to that. Now, the functional limitation here is listener selected versus scanning the sequencing file and the corresponding structure to advance to the next song of the appropriate lock type. They're two separate commands. The specification describes the skip command and go command differently. And the claim language is different. And the corresponding structure is different than all three of these things. Yet the PTAB found this Claim 14 in all go commands invalid based on disclosure of the find next command found in the chase reference. The find next command functionally, not algorithmically, but functionally is the same as what we understand as a skip command. Well, this is clear error because what is not being disclosed there is jumping to a listener selected file as explicitly described. Well, how do you address the paragraphs 184 and 186 of chase where the control keys are taught? I mean, doesn't that show that there is an ability to do the commands? It teaches using the up and down arrows? By pressing the buttons. Pressing the buttons is not the algorithmic step that's actually found in the patent. The patent says that you find the listener selected, and with respect to the go command, the corresponding structure is you look for the listener selected file that's been selected on the visual menu, and you fetch and display it, and you alter the current claim variable. Pressing those buttons never hops to a listener selected position. All it does instead is go to positions that are selected by the algorithm, and that would be the next song in the sequence of the appropriate block type. In those situations, the listener doesn't even know what they might jump to, because some of this stuff is subject skipping, topic skipping, and highlight skipping. It's not something you would necessarily know in your head. You do not necessarily know where you're going to next when you use this skip function in the patent, so you can't say the step of jumping to a listener selected position is found in the skip commands. Here, the go commands explicitly, the corresponding structure, the function explicitly requires you to do that. They're very different things. I think I'm getting very close on time, but I think what's really important about that is this. Regardless of whether you agree with me that the skip command or basic skipping discloses the go command, but when you look at the algorithmic structure, I don't believe that's the case. There's still error here, because the prior art combination only discloses one command, and all of the prior art will advance to any song whatsoever. Only one command. The claims 14 and claims 4 explicitly require two commands, a first command and a second command. So even if you find a basic skip button discloses a go command, there's no explanation of why we arrive at the resultant claim combination or a motivation to combine the claim combination that has two commands. There's no reason why to have two commands employ one algorithm and be identical. Their combination does not disclose two commands, even if you think that the go command can meet the skip command. Because of that, that is clear error. The failure to articulate a motivation, which is completely absent in this opinion, even under the substantial evidence standard, is reversible error. Thank you. We'll restore a couple minutes of your time. I have six seconds. I just want to say this. The claim construction of a listener being a broadcaster is an error. The listener excludes a broadcaster, and I'd like that to be addressed. I'd like to address a few points on the direct appeal before turning to the cross appeal. We'll add some time because we're going to restore two minutes of his rebuttal. Thank you. One of Mr. Hardy's first points was the continued playback at 235. If you look at 235, you'll see you can actually get to 235 from either 233 or 269. Continued playback is just continuing playback. It's not saying it's the start of playback. So that's the answer to that one. With respect to your reliance on 267, though, can you go to column 15 and starting at about line 21? Sure. Where it says the third command, the skip command, indicated at 275 in figure three, causes the player to advance to the beginning of the next program segment in the program sequence, recording the start of the next sequence at 267, and resetting the playback position at 269. Doesn't that describe exactly what your friend on the other side says 267 is all about? No. The only timing occurs at 267. It says recording the start of the sequence, but it's an actual timer. It's referred to playback time. Again, if you look down at later in the column, it says recording the start time. Where are you exactly? I'm sorry. It's at line 60 and 61. Even if you take a look, it says record segment end in new start. It's calculating a time. His argument is that it's just calculating it for some other purpose. It may well be used if you're doing some sort of metering. That's another use for it. But the only calculation of time in the patent is that calculation. Again, you're telling us that 267 means something, and 267 is described in some detail. If you look at 55 to 59, it talks about what it does, and it talks about it in precisely the same terms that Mr. Hardy just talked about it. So I guess I'm trying to understand why you tell us that we should read a ton into that box when the detailed description of what that box does doesn't support what you're saying. Well, it actually says, I think, it says by resetting the playback point. Where are you? I'm on 61 of column 15. It says recording the start time, volume setting, and new program segment idea in the log file is indicated at 267. It expressly refers to recording the start time. His only argument is that it's recording it for some other purpose. But perhaps it's used for logging it to calculate how much time you've been using the system, but that's not anything that's discussed in these claims. The only discussion of any timing here is this passage here. It may well be the start of the next segment, but that just confirms my point. That's the dividing line. For the predetermined period of time, you need to know how much time has elapsed since the beginning. You don't need to know how much time is remaining until the end of the segment. There was some question about column 12, lines 4 to 64, indicating timing. Actually, if you look at that, it's talking about the numerical order. Is it track number 1, 2, 3, 4, 5, 6? Really, this is the only discussion of it in the patent. Finally, on the cross-appeal, the issue with respect to the go and skip commands. Again, the board discussed claims 1 and claim 4 separately. It addressed the go command, and then it separately addressed the skip command. They are distinct functions, and we acknowledge that in our petition, and we explain that the go command will let you go to the beginning of a user-selected track, which you can do by hitting, say, the right arrow. If you want to go to number 1 to number 3, you just, from the down arrow, and you go 2 and you go to number 3. You can go anywhere. It talks about scrolling. This is in both chase and lope. The function is disclosed. The question is really the algorithmic structure, and that was undisputed. We had an expert who explained why the algorithmic structure in Chase's software appendix, which directly explained how to go to the next file, was also rendered obvious going to the command for claim 1. That testimony was undisputed. It was expressly credited by the board. Attorney argument is great. It just wasn't in the record. It was an undisputed opinion of our expert. Actually, it makes sense because it's actually quite easy to go to any file. Once you know I want to go to file 3, you just tell it to go to file 3. The structure there was actually more complicated because you had to figure out what the next file was. Was it 2 or 3? It's actually easy, but we didn't have to get into all that because it wasn't disputed below. It was an undisputed evidentiary record. The board went with us. It's a substantial evidence question, so we submit that you should affirm on that. The proper result is to remand with respect to two claims, 8 and 28, where there are some remaining issues. Otherwise, determine that the claims are unpatentable. Thank you. Thank you. Your Honor, if I may. I want to point something out. Claims 1, 7, 8, 9, 10, and 13 require that a sequencing file from outside the player be sent to the player based upon the personalized preferences of a listener. Claim 14 requires a sequencing file to contain a sequence selected by the listener. And then 076 claim 1 requires a sequencing file to be chosen by or for the users. In each of these situations, you required a sequencing file from outside the player to be sent to the player based on the preferences of the listeners. Now, the theory of invalidation relied on the PTAB, is that one would modify the DJ jockbox interface of the broadcaster to create a personalized player to play the preferences of the DJ. In doing so, they found that the preferences of the DJ broadcaster can meet the limitations of the preferences of the listener. In other words, the DJ could be the listener in the claim combination. Now, the problem with this is the claim term listener, when read in light of the specification, clearly excludes broadcasters. I'm going to direct you to page 60 of our cross-appellants brief, but I'm going to just read this out because it's relatively short. There are many quotes on this, but the quote that I want to focus on is this. Even when desired programming is found, it must be listened to when it's a broadcast. That is times chosen by the broadcaster and not the listener. Well, the words broadcaster and not the listener means the specification is clearly drawing the distinction between broadcasters and listeners. If we treat the broadcaster preferences the same as listener preferences, just because they might hear their own broadcast, the invention would address none of the stated goals that are described in the specification it intended to address, like not using broadcaster preferences instead of having personalized preferences. That's cited on page 59. So this theory relying on a DJ broadcaster's preferences to meet the claim limitations of the listener's preferences is a clear error of claim construction. It contradicts the statement listener when viewed in the specification, and that's an error. Your time is up. I still have 37 seconds? According to my clock here? Your light is red. Oh, okay. Thank you. We thank both sides in the case.